## Case No. 10,041.

### NATIONAL EXCH. BANK v. MOORE.

[2 Bond, 170;[1] 1 N. B. R. 470 (Quarto. 123); 1 Am. Law T. Rep. Bankr. 74.]

District Court, S. D. Ohio. Feb. Term, 1868.

USURY—NATIONAL BANKING ACT—FORFEITURE OF DOUBLE INTEREST—PRINCIPAL DEBT—VITIATED CONTRACT.

1. Section 30 of the national banking act of June 3, 1864 [13 Stat. 99], restricts banks organized under the act to the rate of interest on loans and discounts authorized by the laws of the state in which a bank is located; and provides, that charging or reserving a higher rate of interest shall subject the bank to the forfeiture of all the interest charged or paid, with a right by the person paying the same to sue for and recover double the amount paid.

[Cited in Darby v. Boatmen's Sav. Inst., Case No. 3,571; Re Pittock, Id. 11,189; Hill v. National Bank of Barre, 15 Fed. 433.]

2. But the statute does not provide for the forfeiture of the principal debt; and although interest has been reserved, by a bank in Ohio, in excess of the rate of interest allowed by the law of the state, the bank has a valid claim against the debtor for the principal debt.

[Cited in Re Pittock, Case No. 11,189.]

3. Although the reservation of an illegal rate of interest is in violation of the statute, there is no provision for the forfeiture of the principal debt; and, the statute having provided for the forfeiture of twice the amount of the illegal interest charged, the fair implication is, that it was the intention of congress that such forfeiture should be the only penalty.

4. The reservation of ten per cent. interest being in excess of the rate prescribed by the state, does not involve such moral turpitude as on the principles of the common law to vitiate the contract.

In bankruptcy.

H. C. Noble, for petitioner.

C. N. Olds, Mr. Baldwin, and Mr. English, for bankrupt.

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

LEAVITT, District Judge. The petition alleges that the National Exchange Bank of Columbus is a creditor of Addison Moore in a sum exceeding three hundred dollars, upon a liability created by his indorsement of a promissory note given to said bank by one W. W. Moore, payable to the order of said Addison Moore three months after June 1, 1867, which was not paid at maturity, though payment was duly demanded, and the indorser notified of the non-payment. The petition then avers several acts of bankruptcy, in making payments and transfers of property to certain creditors, with a knowledge of his insolvency, and with intent to prefer them. The prayer of the petition is, that for these acts the said Moore may be declared a bankrupt, pursuant to the act of congress, approved March 2, 1867 [14 Stat. 517]. The alleged bankrupt, having been duly notified of the time and place of hearing, has appeared by counsel and filed his answer to the allegations of the petition charging the acts of bankruptcy, and also averring that the debt claimed as due to the said bank is not a demand provable under the bankrupt act, and that the promissory note indorsed by him is a nullity, for the reason that in its discount by the bank interest was reserved and paid at a higher rate than six per cent. per annum. The legality and provability of the petitioner's debt precedes the question whether the alleged acts of bankruptcy have been committed, and therefore first requires the consideration of the court. The bankrupt act, in terms, makes it necessary that the petitioning creditor should allege and prove a valid and legal demand against the person proceeded against as a bankrupt; and it is obvious, therefore, if this exception is sustained he has no standing in court, and his petition must be dismissed unless some other creditor shall choose to prosecute as the petitioner.

It is admitted, by the counsel for Moore, that the petitioning creditor, the National Exchange Bank of Columbus, is a banking institution, legally organized and doing business as such, under the authority of the national banking law of June 3, 1864. It is admitted, by the counsel for the bank, that the note described was discounted by that institution, and that interest on the same, charged and reserved, was at the rate of ten per cent. per annum. And it is insisted, that the interest so charged and reserved, being in excess of six per cent. per annum, is usurious, and the discount of the note beyond the corporate power of the bank; and, therefore, that the note indorsed by said Moore is void, and cannot be viewed as creating a valid debt provable under the bankrupt act. The question thus presented involves the construction of the provisions of the national banking act prescribing the rate of interest which banks organized under it may charge and reserve, and the legal effect of charging and reserving a higher rate than that limited

by the act. The court has no information that this question has been judicially decided as arising under the bankrupt act of 1867, and is therefore without any precedent to aid it in reaching a conclusion. That it is one of great practical importance, and not free from doubt, may be readily conceded. Regretting that the pressure of other duties has not permitted a more thorough investigation of the point, I will proceed to state the views I entertain.

Section 30 of the national banking act provides, "that any banking association may take, receive, reserve, and charge, on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the state or territory where the bank is located, and no more, except that where, by the laws of the state or territory, a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized in any such state under this act. And where no rate is fixed by the laws of the state or territory, the bank may take, receive, reserve, and charge a rate not exceeding seven per centum; and such interest may be taken in advance, reckoning the days for which the note, bill or other evidence of debt has to run. And the knowingly taking, receiving, reserving, or charging a rate of interest greater than aforesaid, shall be held and adjudged to be a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. And, in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of interest thus paid, from the association receiving the same."

The question arising under this provision of the banking law of the United States has been fully and ably argued by the counsel on both sides, and numerous authorities have been cited. On the one hand, it is insisted that as by the law of Ohio six per cent. per annum is established as the legal rate of interest, the reservation of a higher rate by a national bank is an excess of its corporate power and usurious in its character; and that the writing or evidence of debt, on which interest is thus reserved or paid, is a nullity and can have no legal force. On the other hand, it is contended that although such reservation of interest is in conflict with the statute and therefore illegal, the statute has affixed, as the penalty of the illegal act, not the forfeiture of the principal debt, but of the entire interest illegally reserved, with the right, to the party paying it, to recover, by suit against the bank, double the sum of the interest paid. The cases cited by the counsel, urging this exception to the demand of the petitioning creditor, are harmonious in holding that a contract or agreement against public policy, or founded upon an immoral consideration, or in conflict with an explicit statutory provision, is invalid and can not be enforced in a court of justice. It is, undoubtedly, a sound legal principle, that courts will not lend their aid to enforce contracts or transactions to which such objections apply. But, it occurs to the court, that the point presented in this case is not fully met by the cases cited. This court is called upon to give a construction to the section of the national banking law, which has been quoted. And the rule of interpretation is, to ascertain, from the whole section, what was the intention of the legislature in enacting it. In prescribing a rate of interest legally chargeable, and declaring an excess of such rate to be illegal, was it intended that the contract should be an entire nullity, and the principal, with twice the amount of interest charged, be forfeited; or, was it intended that the forfeiture of double the interest charged should be the penalty for the illegal act, without invalidating the right of the bank to enforce the payment of the principal debt? It was clearly within the legislative power to have declared that the penalty for charging or receiving illegal interest should be the forfeiture of both principal and twice the amount of interest. But, if this had been intended, would not such an intention have been expressed in explicit language. There is no reason to doubt that if the section referred to had stopped with the prohibition of taking or reserving interest in excess of the rate prescribed, a loan made by a bank in conflict with such prohibition could not be enforced. It would unquestionably be held to be an illegal and void act. But the legislature has chosen to prescribe a specific penalty for the illegal act, namely, the forfeiture of double the sum of the entire interest charged or paid, and have not declared that the principal debt should be forfeited. It is certainly not reasonable to infer that it was the intention of congress to provide a double penalty for the illegal reservation of interest on loans. Yet such would be the effect of the construction of the section referred to, as insisted on by the counsel for the alleged bankrupt. So far as the court is advised, there is no law in any of the states of the Union on the subject of usurious interest, which provides for the forfeiture of the entire debt on which such interest has been charged and paid, together with the interest and a liability on the part of the creditor to pay twice the amount of the interest to the debtor. I am therefore led to the conclusion that by a fair implication, it was not intended by congress, in the enactment of the section referred to, to punish a bank for reserving interest in excess of the statute, by the forfeiture not only of the principal debt, but double the interest charged or received. It was held by the supreme court of the United States, in the case of U. S. v. Babbitt. 1 Black, 61, that "what is implied in a statute, pleading,

contract, or will, is as much a part of it as what is expressed." From the provisions of section 30, it would seem to be fairly implied that while the specific forfeiture named is enforceable, the transaction as to the principal debt is not invalidated.

This view, in my judgment, violates no principle of sound morality or of public policy. It was clearly competent for the congress of the United States, in the creation of the national banking system, to visit the banks with a severe penalty for taking excessive interest, without·a forfeiture of the debt. In this age of commercial enterprise and activity, many solvent and perfectly responsible persons find that they can make profit by borrowing money at a rate of interest above the legal standard. If the rate charged is not so high as to be unconscionable and oppressive, no wrong is perpetrated on the borrower, and no just reason is perceived for absolving him from his liability to pay the principal debt, unless the legislative will to that effect is clearly expressed. It may be right and expedient that proper guards should be provided by law against extortionate charges for the loan of money. Usury, in its odious sense, is immoral and reprehensible; but if one voluntarily borrows money from a bank or an individual, and in good faith promises payment, with interest beyond the legal rate, there is no justice in visiting upon the lender the forfeiture not only of the debt, but subjecting him to a liability, at the suit of the borrower, to double the amount of interest charged. If there is culpability in such a transaction, both parties are equally implicated; but the construction of the statute insisted upon, places it in the power of the borrower, not only to relieve himself from the entire debt, but to make dishonorable gain by suing for and recovering double the amount of interest reserved. In the absence of any clear statutory provision for this purpose, I am unwilling to sanction such a construction of the section of the law referred to as will lead to the results indicated. There is high judicial authority for the doctrine that an act may be unlawful as within the prohibition of a statute, and yet a debt or obligation growing out of the act be valid, unless it appears by·a fair construction of the statute that it was the intention of the legislature that it should be void. The case of Harris v. Runnels, 12 How. [53 U. S.] 79, seems to be directly in point on this proposition. The defendant was sued on a .promissory note, the consideration of which was the price of certain slaves taken to the state of Mississippi, in violation of a law of that state. Upon the question whether the note was void, the court held that the intention of the legislature as to the validity of the note, must be decisive of the question. In their opinion, the court say: "Whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, it is not to be taken for granted that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice." And further: "It is true that a statute containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be inferred, a contract in contravention of it is void. It is not necessary, however, that the reverse of tnat should be expressed in terms to exempt a contract from the rule. The exemption may be inferred from those rules of interpretation, to which, from the nature of legislation, all of it is liable when subjected to judicial scrutiny. That legislators do not think the rule one of universal obligation, or that upon grounds of public policy it should always be applied, is very certain. For in some statutes, it is said in terms that such contracts are void; in others, that they are not so. In one statute there is no prohibition expressed, and only a penalty; in another, there is prohibition and penalty, in some of which, contracts in violation of them are void or not, according to the subject-matter and object of the statute; and there are other statutes in which there are penalties and prohibitions, in which contracts made in contravention of them will not be void, unless one of the parties to them practices a fraud upon the ignorance of the other. It must be obvious from such diversities of legislation, that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be fully examined before courts should refuse to give aid to enforce contracts in contravention of them." The case cited seems strongly to sustain the principle that unless it is clear, from the words of a prohibitory statute, that an agreement in violation of it is void, courts will not so declare it, but will give effect to the agreement. The intention of the legislature is to be made out by referring to the whole statute, and such intention will control the courts in giving it a construction. And, as before remarked, there being nothing in the national banking act from which an intention to invalidate a contract, by which illegal interest is reserved, is fairly implied, and there being ground for the presumption, from the specific penalty provided, that such effect was not intended, I am led to the conclusion that the note in question is not void, and must be recognized as a provable debt under the bankrupt law.

The case of Bank of U. S. v. Owens, 2 Pet. [27 U. S.] 527, is cited by counsel as sustaining the doctrine that all contracts prohibited by law are unconditionally void, and not to be enforced, even if there is no express provision declaring their nullity. The principle

held in that case is, however, explained and modified by the later case of Harris v. Runnells, before referred to. And it may be remarked that the facts in the case in 2 Pet. were of a character requiring the most stringent application of law to secure the ends of justice. There was flagrant and oppressive usury on the part of the bank, as well as a clear violation of its charter. The interest reserved, as stated in the opinion of the court, was equivalent to forty-five per cent. for three years, being about fifteen per cent. per annum in excess of the legal interest. Every instinct of justice required that relief from this hardship should be afforded the injured party. But the case before this court does not present any of the repulsive features of the case referred to. It involves no moral turpitude, vitiating the contract on general principles. It is simply the case of a voluntary indorsement of a promissory note, in the discount of which interest was reserved at the rate of ten per cent. per annum. There is no pretense that any unjust advantage was taken of the necessities of the borrower, or that anything transpired which would shock the conscience of the most upright person. If, therefore, the note in question is void, it must be because the statute makes it so, and not on the general principles of the common law. It is insisted, however, by the counsel for the alleged bankrupt, that the discounting the note in question, with a reservation of illegal interest, was beyond the corporate power of the bank, and imports an excess of authority which invalidates the note. It is doubtless true, as a general principle, that every corporation must adhere strictly to the law of its creation, and can exercise no power not expressly granted or necessarily implied. But the cases are numerous to the effect, that where a banking institution is vested by its charter with authority to make loans by the discount of paper, its legal rights and responsibilities as to such a transaction are the same as those applicable to private persons. The laws of all the states of the Union prescribe the rate of interest which may be charged in the ordinary transactions of life, and affix a penalty for any excess beyond the rates fixed. But the same rule applies to such transactions as applies to corporations deriving their authority from their charters. In this respect there seems to be no difference between natural persons and corporate entities. This principle was fully discussed and settled in two cases to which the attention of the court has been called, after full consideration. The cases referred to are Farmers' Bank v. Burchard, 33 Vt. 346, and Commercial Bank of Manchester v. Nolan, 7 How. (Miss.) 508. These cases, with many others that might be cited, distinctly hold that where a bank reserves illegal interest in its loans, unless its charter expressly declares that the contract of loans shall be void, it is void only as to the excess of interest charged, and not as to the principal. And it may not be inaptly noticed that this is the spirit of nearly all the modern legislation of the states on this subject. With few exceptions, the forfeiture of the illegal interest, or the whole of the interest reserved, is the penalty declared. And can it be reasonably doubted that the congress of the United States, in the enactment of section 30 of the national banking law, intended the same result, but superadding to the forfeiture of the entire interest, and as a further penalty, a liability to pay twice the sum of the entire interest reserved.

The counsel for Moore have referred to sections 9 and 53 of the national banking law, as showing the excess of corporate power of the bank in discounting the note in question at the rate of ten per cent. per annum. Section 9 requires each director of a national bank to take an oath that he will not knowingly violate, or willingly permit to be violated, any of the provisions of the act. And section 53 provides that the knowingly violating, or permitting the violation, of any of the provisions of the act by a director shall be a ground of forfeiture of all the rights and franchises granted, to be adjudged by a court of the United States, in a suit for that purpose, prosecuted by the comptroller of the currency. These are doubtless wise and just provisions to secure the faithful performance of the duties of directors. If complaint is made against them under the provisions of section 53, in the manner prescribed, the corporation is subject to forfeiture of all its rights and franchises, upon a proper adjudication by a court of the United States. But it is not perceived that this provision can affect the construction of section 30, fixing the rate of interest which may be charged, and the penalty for charging a rate in excess of that prescribed. The illegal interest is made a ground for the forfeiture of the charter, but it does not follow that a contract of loan by which illegal interest is reserved shall be void as to the principal debt, or that, as between the parties to the transaction, any other result would follow, beyond the liability of the bank to forfeit twice the sum of interest received. On this subject the remark of Judge Story, in the case of Fleckner v. Bank of U. S., 8 Wheat. [21 U. S.] 388, seems directly in point. That learned judge, delivering the opinion of the court, says: "The taking of interest by the bank beyond the sum authorized by the charter, would doubtless be a violation of its charter, for which a remedy might be applied by the government; but as the act of congress (the charter of the bank) does not declare that it shall avoid the contract, it is not perceived how the original defendant could avail himself of this ground to defeat a recovery."

In closing this opinion, I may remark that the pressure of other duties has prevented me from noticing in detail the several cases

cited by the counsel for Moore to sustain the exception to the debt of the petitioning creditor. It did not seem to the court necessary that this should be done. The cases cited from the Ohio Reports, and the Reports of courts in other states, have no direct application to the question before this court. The decisions referred to were based on state statutes, the language of which, in relation to the reservation of illegal interest, was not in terms, or substantially, the same as that used in the national banking act under which the present question arises. In reaching the conclusion indicated, namely, that the debt of the National Exchange Bank of Columbus, so far as the principle is concerned, was not intended to be invalidated by section 30 of the national banking law, and is a debt provable under the bankrupt act, candor requires me to say that I am not altogether free from doubt. The question, as it bears upon the present proceeding, is not important to the parties. Under the bankrupt law, if the debt of the petitioning creditor is not valid, any other creditor may, by leave of the court, be made a party to the proceeding, and the petition may be brought to a final hearing on the merits. But in reference to the banking and commercial interests of the community, the question is one of vast practical importance. And doubtless it will soon be definitely settled by the court of the last resort. The exception to the petition is overruled, and the case will be heard on the facts which it alleges.