## WILEY ET AL. *v.* STARBUCK.

NATIONAL BANKS.—*Interest.*—National banks, organized and doing business in this State, are entitled to contract for and receive, upon loans of money, interest at the rate of ten per cent. per annum.

SAME.—*Validity of Usurious Note.*—The reservation of more than the legal rate of interest by such bank does not render void a note given for money loaned. The only penalties incurred by the bank in such a case, so far as concerns the debtor, are the forfeiture of the unpaid interest, and a penalty of twice the amount of interest that has been paid, if sued for within two years, the time limited by the national banking law.

SAME.—*Liability of Sureties.*—Such note, being valid as against the principal, is not void as to his sureties.

SAME.—*Recoupment.*—In a suit on a note given for money borrowed of a national bank, the defendant cannot recoup illegal interest paid in advance. The remedy given by the national banking act for the recovery of excessive interest is exclusive, and cannot be supplemented by the statute of this State on that subject.

SAME.—*Attorney's Fees.*—Where such note provides for reasonable attorney's fees, the plaintiff is entitled to recover such fees in an action on the note.

From the Wayne Common Pleas.

*J. B. Julian* and *J. F. Julian*, for appellants.

*W. A. Bickle*, for appellee.

BUSKIRK, J.—The action below was on two several writings obligatory, payable jointly and severally, as follows:

1. For one thousand two hundred dollars, dated December 7th, 1868, payable at ninety days to Edward Starbuck or order, at the First National Bank of Union City.

2. For four thousand dollars, dated November 1st, 1868, payable at sixty days to the First National Bank of Union

City. This last note is endorsed to said Edward Starbuck by said bank. The notes in other respects are similar, and each contains waiver of demand of payment, notice, and protest, and authorizes any attorney at law to appear for the parties, or either, in any court in Indiana or Ohio, or elsewhere, and confess judgment for the note and interest, with damages on bills within the jurisdiction of the United States and without the jurisdiction of Ohio and Indiana, with costs, attorney's fees, and without relief, etc., and "with interest at ten per cent. per annum, if not paid when due," etc.

To this action an answer in nine paragraphs was filed.

The 1st is a general denial.

The 2d was a general plea that the plaintiff was not the real party in interest, without the allegation of any facts.

The 3d, general plea of payment.

The 4th and 5th paragraphs are to the 1st paragraph of the complaint, which declares on the note for one thousand two hundred dollars payable to Starbuck.

The 4th paragraph is pleaded to four hundred and eighty-one dollars of said note as the aggregate of the sums of thirty-seven dollars, alleged to have been "demanded," "received," and "reserved," by the bank at the end of each ninety days from the inception of the note, in December, 1865, to the giving of the note sued on; alleging that the note was given to Starbuck, president of the bank, to cover up the "illegal transaction of the bank;" that the sum of thirty-seven dollars was twelve per cent. reserved by the bank "illegally;" that the said Starbuck had "no interest in the said money loaned, or the note given for the same."

The 5th paragraph is also pleaded to the first count, and is addressed to the interest of thirty-seven dollars paid on the note sued on and accruing interest. It alleges that the transaction was with the bank; that said Starbuck had no interest in the money loaned or note given.

The 6th and 7th paragraphs are pleaded, in the same order and substantially to the same effect as the above, to the 2d count on the four-thousand-dollar note.

The 8th is on the common money count for indebtedness of the bank to defendant in the month of September, 1870.

The 9th paragraph was as follows:

"9th. The defendants Wiley and Wiley, for a ninth paragraph of answer, say, that they are the sureties of the defendant McKemy on the notes sued on, he being the principal; that said notes were discounted by the First National Bank of Union City, an incorporation organized under the national banking law of the United States, and doing busines in Randolph county, Indiana, and the money therein described was advanced and loaned by said bank, the said plaintiff being the president thereof and transacting the business, but having no interest whatever in said notes or the money loaned, and simply holding and taking the same in trust for the use of said bank, and taking one of them in his own name, and an assignment of the other with full knowledge of the facts stated, to cover up and conceal the illegal character and effect of the taking of illegal interest on said loan as hereinafter stated. And the said defendants say, that at the time of the discounting of the said notes, the said bank illegally charged, contracted for, reserved, and received interest on said several sums of money at the rate of one and one-half per cent. per month, in advance, during the ninety days following the several discounts of said several notes; wherefore, because of such illegal and unwarranted acts of said bank, the defendants say that said notes are void."

Issue was taken on the 3d and 8th paragraphs.

A demurrer was sustained to the second, fourth, fifth, sixth, seventh, eighth, and ninth paragraphs of the answer, and proper exceptions were taken.

The cause was submitted to the court for trial and resulted in a finding for the plaintiff in the sum of five thousand four hundred and thirty dollars and ninety-three cents.

The plaintiff moved the court for a new trial, for the following reasons:

1. The court erred in refusing to allow the plaintiff attorney's fees in said cause on said notes.

2. The court erred in refusing to compute interest on said notes from the date of each.

The defendants moved the court for a new trial for the reasons following :

1. Because the finding and judgment of the court is excessive.

2. Because the judgment ought to have been for the defendants.

3. Because the court erred in sustaining demurrers to the defendants' answer.

Both motions were overruled, and each party took an exception.

The plaintiff has assigned the following cross error :

That the court erred in overruling his motion for a new trial.

The defendants have assigned for error the sustaining of the demurrers to the answer of the defendants, and in overruling their motion for a new trial.

Did the court err in sustaining the demurrer to the several paragraphs of the answer?

The second paragraph of the answer was clearly bad, for the reason that it did not state facts sufficient to constitute a defence. *Raymond* v. *Pritchard*, 24 Ind. 318.

The fourth, fifth, sixth, and seventh paragraphs of the answer present for our decision the questions of what rate of interest the national banks may charge in this State, and whether a person who has paid an illegal rate of interest may deduct the amount so paid from the principal of the note, in an action upon such note.

The solution of these questions depends upon the construction to be placed upon the 30th section of the national banking law, and the laws of this State.

Section 30 of said law reads as follows:

"Sec. 30. And be it further enacted, that every association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws

of the state or territory where the bank is located, and no more, except that where by the laws of any state a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized in any such state under this act. And when no rate is fixed by the laws of the state or territory, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run. And the knowingly taking, receiving, reserving, or charging a rate of interest greater than aforesaid shall be held and adjudged a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided, that such action is commenced within two years from the time the usurious transaction occurred. But the purchase, discount, or sale of a *bona fide* bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest."

The above section contains five distinct propositions, namely:

1. That every association may take, etc., on loans, etc., interest at the rate allowed by the laws of the state, etc., where the bank is located, and no more, except where a different rate is limited for banks of issue under the state, the same shall be allowed, etc., for such first named associations.

2. When no rate is fixed by the laws of the state, they may take seven per cent.

3. The "knowingly taking," etc., a greater rate "than aforesaid" shall be held a "forfeiture of the entire interest

Wiley *et al. v.* Starbuck.

which the note," etc., "carries with it, or which has been agreed to be paid thereon."

4. If a greater rate has been paid, twice the amount may be recovered back, if the action is brought within two years from the time the usurious transaction occurred.

5. But the purchase, etc., or sale of bills of exchange, with current rate of exchange added to the interest, shall not be considered as taking or receiving greater interest.

Here then, we have four rules prescribed for the taking of interest in the above 1st, 2d, and 5th subdivisions.

1. The rate allowed by the laws of any state, etc. .

2. Any rate that any bank of issue in any state may take.

3. If no rate is fixed, seven per cent.

4. Current exchange added to interest.

There being a bank of issue, created by the laws of this State, we are required to ascertain what rate of interest may be charged and received by such bank.

The 13th section of the charter of the Bank of the State of Indiana reads as follows :

"Sec. 13. Said bank shall be entitled to charge and receive for money loaned the legal rate of interest established by law in this State, and not more, and the same may, according to bank rules, be taken in advance out of the sums loaned, and may be computed according to the standard and rate set forth in 'Rowlet's Tables,' reckoning the days for which a note or bill has to run inclusively ; but it shall not, directly or indirectly, place any money in the hands of any broker or other person, to be loaned to others, or charge, take, or receive any interest, compensation, or benefit, whatever, from any loan made by any other person or party, whether such loan be made from its own funds or otherwise." 1 G. & H. 141–42.

By the above section, the bank of the State is entitled to charge and receive the legal rate of interest established by the laws of this State.

The first section of an act concerning interest on money, approved March 9th, 1867, reads as follows :

"That interest upon the loan or forbearance of money, goods or things in action, shall be at the rate of six dollars a year upon one hundred dollars, and no greater rate of interest shall be taken, directly or indirectly, unless the agreement to pay a higher rate of interest be made in writing, and signed by the party to be charged; but such rate of interest shall in no case exceed the rate of ten dollars a year on one hundred dollars; but it may be taken yearly, or for any shorter period, in advance." 3 Ind. Stat. 317.

By the above section, six per cent. is the legal rate of interest in this State, unless there is an agreement in writing to pay a higher rate of interest, signed by the party to be charged, but such rate of interest can in no case exceed the rate of ten per cent. per annum.

The national banks organized and doing business in the State of Indiana may charge and receive interest at the rate of ten per cent., to which may be added the current rate of exchange for sight drafts, where there is a purchase, discount, or sale of a *bona fide* bill of exchange payable at another place than the place of purchase, discount, or sale.

We proceed to inquire, whether the appellants had the right, in this action, to deduct from the principal of the notes sued upon the interest which had been paid in advance, the bank having charged and received illegal interest.

It is provided in the above quoted section of the national banking law, that " the knowingly taking, receiving, reserving, or charging a rate of interest greater than aforesaid shall be held and adjudged a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon;" and it is further provided in such section, that " in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of interest thus paid from the association taking or receiving the same."

It is very plain that where an action is brought by a national bank upon a note, bill, or other evidence of debt

payable to or for the use of such bank, and it is shown that such bank had knowingly taken, received, reserved, or charged a greater rate of interest than is allowed by law, the entire interest which such note, bill, or other evidence of debt carries with it, or which has been agreed to be paid, is forfeited, and no recovery can be had for interest which remains unpaid.

And it is equally plain that where any person or persons have paid to any such bank a greater rate of interest than is allowed by law, such person or persons paying the same, or their legal representatives, may, in an action of debt against such bank, recover twice the amount of interest thus paid from the association taking or receiving the same.

But suppose a loan has been made of a national bank, and a note has been taken payable ninety days after date, upon which usurious interest has been charged and received in advance, and an action is brought upon such note, will the interest thus paid be regarded and treated as a payment upon the principal of the note, or will the person paying the same be driven to his action of debt against the bank, to recover twice the amount of interest thus paid?

The solution of this question depends upon whether we are to be governed exclusively by the national banking law, or whether the usury laws of this State have any application to an action brought by a national bank. In other words, are the defendants confined to the remedy conferred by the act of Congress, are the penalties prescribed by the act of Congress merely cumulative to those of the states, and may the penalties prescribed by the statutes of this State be set up as a defence?

The precise question involved here came before the Supreme Court of New York, in the case of *The First National Bank of Whitehall* v. *Lamb*, 57 Barb. 429, where the court say: "The act of Congress in question is the only statute in existence, on that subject, enacted by the federal legislature; it cannot therefore be said to be *in pari*

*materia* with any other statute. The statutes passed by leg-
islatures under other governments have no influence or con-
trol over this ; and its construction is not controlled by them.
It is to be construed by itself. It is repugnant to the pro-
visions of no statute enacted by the same government ; and
if repugnant to statutes under another government, it in
nowise affects this. Other governments have no power to
enact statutes which can limit or control the absolute,
supreme and sovereign power of this government. Con-
gress has not in this attempted to repeal or interfere with
the statutes of the State of New York on the subject of
usury, and have not the direct power to do so, should they
attempt it. Nor has Congress, either in terms or by impli-
cation, adopted the statute law of New York, or its penal-
ties, on this subject. With its own unrestrained power to
legislate on this subject, it has matured its own independent
project of governmental agencies, which stands alone as a
single, separate and distinct system of banking and agency,
unaided by, and disconnected with, other systems. It has
conferred benefits upon the corporators themselves and per-
haps upon the public ; and in consideration thereof has
demanded and received in return, from these agencies, there-
for, various and onerous duties, aids, securities and credits
to the government, and from the institutions so authorized.
These are to be regarded as fair and equal equivalents, with
mutual considerations passing from the one to the other. The
government was authorized to employ them as depositories
of the public moneys, and as financial agents of the govern-
ment, and their supervision was committed to an agent of
the federal government. The institutions were bound to
deposit securities for the government's protection, and also to
keep deposits and accumulate a surplus fund for that pur-
pose. It has, in this system, permitted the institutions to
receive a fixed and fair equivalent, to be received for loans
and discounts to individuals, of money upon notes and bills
of exchange, and at the same time has thrown its protect-
ing influences over such individuals to prevent abuse and

oppression (as it must be supposed) by adequate penalties to be inflicted for violations of the statute. In other words, for the value to the corporators of chartered rights and privileges conferred, the government imposed certain burthens upon these agencies as a condition to the grant; and the conferring and receiving of these reciprocal benefits, with these duties and burthens and subject to its penalties, are the terms, and these only, of the compact between the government and the corporators in these institutions. 'No other burthens are annexed to the enjoyment of the rights and privileges conferred by this act of Congress.'" *Van Allen* v. *The Assessors*, 3 Wal. 583.

Some of the evil consequences, which would result from holding that the penalties prescribed by the acts of Congress are cumulative only, are pointed out in the opinion of the court in the above case, where the court say : " If the penalties given by the act of Congress are cumulative, leaving the state law also in force, the penalties in the former would probably never be set up as a defence; the latter being a defence to the whole contract, principal and interest, while the former goes only to the interest. So if both are in force, the state law can first be used to defeat the entire recovery upon the contract, which is thereby made void ; and by the law of Congress there would be superadded, by way of further penalty, the liability to have recovered back twice the amount of the interest that had been paid. I do not think it reasonable to suppose that Congress intended to add to the penalties existing by the state law. That was no part of the reason for its enactment, and therefore the law of Congress is not cumulative."

The same consequences and confusion would result in this State. As we have seen by the act of Congress, there are imposed, as penalties for usury, the forfeiture of the entire interest unpaid and the right to recover back twice the amount paid. While in this State, the excess only over the legal rate of interest can be recouped, in an action upon the instrument affected with usury.

It was decided by this court, in *Musselman* v. *McElhenny*, 23 Ind. 4, that " if usurious interest is paid on the note after its execution, it amounts to a payment of so much on the principal of the note ; and if the amount thus paid exceeds the principal, it may be recovered back."

It was held in *Yancy* v. *Teter*, 39 Ind. 305, that the excess over the rate of interest as fixed by the statute or the contract of the parties could be recovered back or recouped.

If the penalties prescribed by the act of Congress and of this State are to be enforced, then, it would seem that in an action on an instrument tainted by usury, the illegal interest that had been paid would be regarded as a payment upon the principal, and the party could afterward recover in an action against the bank twice the amount of the interest paid.

It is finally insisted by counsel for appellee, that the fourth, fifth, sixth, and seventh paragraphs of the answer were bad, because it is not alleged that the usurious interest was corruptly reserved and received.

It was held in *The Bank of the U. S.* v. *Owens*, 2 Pet. 527, and in the case of *The Bank of the U. S.* v. *Waggener*, 9 Pet. 378, that the word corruptly meant intentionally and designedly. The language of the present national banking law is " knowingly," and it is charged in the several paragraphs of the answer that the contract for the usurious interest was knowingly made, and we think that such averment is equivalent to charging that it was corruptly made, even if, under the usury laws of this State, it was necessary to charge that the contract was corruptly made.

It was held in *Cohee* v. *Cooper*, 8 Blackf. 115, that in a plea of usury it was necessary to charge that the unlawful interest was corruptly reserved, and such ruling was followed in subsequent cases ; but in the well considered case of *Cole* v. *Bansemer*, 26 Ind. 94, it was held that under the usury laws as they have existed since 1861, such allegation was unnecessary.

The court in that case say: " There is therefore now no

reason here for the allegation that the contract was corruptly made, and the rule of pleading requiring it must consequently be deemed to have ceased to exist."

It is very plain and obvious to us, that the appellants were not entitled in this action to recoup the interest which they had paid upon the notes in suit. The facts stated in the paragraphs under examination are sufficient to show that the transaction was with the bank, and not with the plaintiff, and that the bank is chargeable with the acts of the plaintiff as the president thereof, and that the penalties prescribed by the act of Congress attach in the same manner, and to the same extent, as though the action was brought by and in the name of the bank. But it does not result from this, that the action could not be maintained by the plaintiff, for the facts alleged show that he was the trustee of an express trust and as such was entitled to maintain the action. *Heavenridge* v. *Mondy*, 34 Ind. 28.

It results from what has been said, that the court below committed no error in sustaining the demurrer to the fourth, fifth, sixth, and seventh paragraphs of the answer.

We proceed to inquire whether the court erred in sustaining the demurrer to the ninth paragraph of the answer.

It is earnestly and ably insisted by counsel for the appellants, that the facts stated show that the entire contract was void as to the sureties. The position assumed is fully shown by the following extract from the brief of counsel:

"The ninth paragraph sets up, on the part of the Wileys, who are sureties for McKemy, the illegality of the several transactions, and claims that the notes are absolutely void as to them.

"Commencing our argument with this paragraph, which is predicated on the theory that the notes are absolutely null and void, because of their illegality, and proceeding in reverse order to the others, we refer to section 30 of the national bank act. Acts of Congress, 1863-64, p. 108. By this section, it is provided that national banks may charge a certain rate of interest, 'and no more.' This is

substantially found in the sentence of which it forms a part. A subsequent sentence provides for a forfeiture of all the interest when any of it is illegal, and another sentence gives the right to recover back within two years double the amount of interest paid. We insist that national banks have only the power to do such acts. and in such way, as is provided by the law under which they exist, and that acts done in violation of that law are utterly void. This has been so held repeatedly by the courts of the several states, and is the uniform doctrine of the Supreme Court of the United States. See *Bank of Chillicothe* v. *Swayne*, 8 Ohio, 257; *Creed* v. *The Com. B'k of Cin.*, 11 Ohio, 493; *Spalding* v. *The Bank of Muskingum*, 12 Ohio, 544; *Miami Ex. Co.* v. *Clark*, 13 Ohio, 1; *Preble Co. Bank* v. *Russell*, 1 Ohio St. 313; *Straus* v. *Eagle Ins. Co.*, 5 Ohio St. 60; *Vanatta* v. *The State Bank of Ohio*, 9 Ohio St. 27; *White's Bank* v. *Toledo Ins. Co.*, 12 Ohio St. 605; *Orr* v. *Lacey*, 2 Doug. Mich. 252; *Bank of the U. S.* v. *Owens*, 2 Pet. 527; *Head* v. *Prov. Ins. Co.*, 2 Cranch, 127.

"These and numerous other decisions settle this principle. The case in 2 Peters is so full, so directly in point, and comes from a quarter commanding such respect, that we deem it necessary only to ask for it the careful consideration of this court. There is no dodging its effect or explaining away its meaning. In this connection, we refer to sections 53 and 57 of same act, which give power to declare a charter forfeited for the taking of illegal interest. In the making of the loans, the First National Bank of Union City violated the plain provisions of the law to which it owed its existence. From that violation it can derive no benefit. The vital force of the contract was lost by its illegality—it was utterly void.

"But it was argued in the court below, and may be urged here, that the fact that, in subsequent parts of the section, provision is made for the forfeiture of all the interest, and for the recovery of it back when paid, shows that it was the intention of Congress that the contract of loan should not be held void except as to the interest.

" The section seems to contemplate loans of money on notes and bills and otherwise, and in all cases confines the banks to certain rates of interest, and says they shall take 'no more.' This is the rule as applied to all cases of loans.

"Why, then, it is urged, follow it with the provision as to the forfeiture of interest? Money is borrowed sometimes with and sometimes without security. Though the security may not be bound because of the illegality of the contract, and though the principal may not even be liable on the contract, he will be, and should be, on the original consideration. Hence, as to him, there is a forfeiture of the interest only, and it applies also to the securities, who may waive their right to treat the contract as void, and stand with the principal as to the interest. The right to treat the interest as forfeited applies to the principal and sureties, the liability of the principal for the debt not being affected. This we regard as the true construction of the section. But why, it is urged, the provision authorizing the recovery of double the interest paid? It was simply in the furtherance of the principle that the interest contracted for should be forfeited when illegal. When paid, double the amount of it can be recovered, if sued for within the time limited. This can be done only by the principal. Both of these provisions are for his benefit, and to enable him to get relief from the interest, and they treat him as liable for the debt. They are entirely consistent with the construction we give to that part of the section which inhibits the taking of more interest than the rate provided for. Indeed, all of these several provisions are necessary to preserve the right of the bank to collect the original debt from the debtor, and at the same time to exempt the securities from responsibility on an illegal contract. All of them were designed to enforce obedience to the law on the part of the banks. When they see proper to disregard its mandates and requirements, they must take the consequences.' The appellants, the Wileys, who put in the ninth paragraph, it will be remembered, are sureties for the appellant McKemy. On their part, we insist

that the notes are absolutely void. The national legislature could not have intended to give legal power to take illegal interest. A good many silly things have been done by that distinguished body, but no folly equal to that has been charged to them."

It is very obvious to us, that the position contended for by counsel for appellants is untenable. The act of Congress makes no discrimination between the liability of the principal and surety, and there is nothing in the relation which creates the distinction. As between the payee and the sureties, so far as the question involved here is concerned, the sureties are principals, while between them and the principal maker, the relation of principal and surety exists. If the notes in suit are legal and valid as to the principal, they must be so as to the sureties; and if void as to the sureties, on account of the illegality of the transaction, they must be void as to the principal. So far as the legality of the transaction is concerned, the principal and sureties must stand or fall together. We, therefore, proceed to inquire whether the knowingly reserving or receiving usurious interest renders illegal and void the principal of the money loaned.

The cases referred to in Ohio were based upon statutes and bank charters very different from the present national banking law and are, therefore, not much in point.

The case of *Head* v. *Prov. Ins. Co.*, 2 Cranch, 127, involved the question of how far a corporation was bound by the acts of its agents, and does not seem to us to have much application to the present case.

The case of *Bank of the U. S.* v. *Owens, supra*, was an action by the Bank of the United States against Owens as principal, and three others as sureties, upon a note payable to the bank. The defence was usury. It was shown that the bank had taken forty-six per cent. interest for three years, or at the rate of about fifteen per cent., per annum, above the legal rate of interest. The act of incorporation forbade the taking of a greater interest than six per cent., but it did not declare void any contract reserving a greater sum than was per-

mitted. The court held the entire contract void. We do not think the ruling in that case can be supported by authority or upheld on principle. While we have been unable to find any other decision of the Supreme Court of the United States holding the same doctrine, we have found three cases where a different doctrine is asserted.

In the case of *Fleckner* v. *United States Bank*, 8 Wheat. 338, Judge STORY delivered a very able opinion, in which a question analogous to that involved in this case was decided. One of the questions was, whether the bank, by purchasing a certain promissory note, was dealing and trading in violation of the act of Congress. The prohibitory clause was contained in the 9th rule of the fundamental articles. The court then, at page 351, proceed to show that by the 12th section it enacts, that if the bank, "or any person or persons, for or to the use of the same, shall deal or trade in buying or selling goods," etc., "contrary to the provisions of this act," etc., "shall forfeit," etc., "treble the value of the goods," etc.

At page 353, the court say: "It may be added upon this point, that even if the bank had violated the rule above stated, by this particular transaction, it is not easy to perceive how that objection could be available in favor of Fleckner. The act has not pronounced that such a violation makes the transaction or contract *ipso facto* void; but has punished it by a specific penalty of treble the value."

And further on, at page 355, the court argue that unless the act of Congress declared the contract void, no such result would follow. And that while the government might proceed for a violation of the charter, an individual could not avail himself of the usury for such purpose.

Also, in the case of *De Wolf* v. *Johnson*, 10 Wheat. 367, a question arose very analogous to the one under consideration. A contract of loan was made in Rhode Island, by whose laws a party is prohibited from taking more than six per cent. interest. The law did not declare the contract void, but inflicted a penalty of the loss of the interest; also,

a sum equal to the whole interest and one-third of the principal, if sued for within a year.

It was contended by the very able counsel in that case, that it was enough that the law prohibited the taking of interest over six per cent. But the court say: "The law of Rhode Island certainly forbids the contract of loan for a greater interest than six per cent., and so far no court would lend its aid to recover such interest. But the law goes no farther; it does not forbid the contract of loan, nor preclude the recovery of the principal under any circumstances. The sanctions of that law are the loss of the interest, and a penalty to the amount of the whole interest, and one-third of the principal if sued for within a year. On what principle could this court add another to the penalties declared by the law itself?"

There is a direct conflict between the ruling in the above case and in that of *Bank of the U. S.* v. *Owens, supra*, and what is remarkable is, that the opinion of the court in both cases was delivered by the same judge, and in the latter case no reference was made to the former ruling.

The principle held in *Bank of the U. S.* v. *Owens, supra*, was modified and explained by the later case of *Harris* v. *Runnels*, 12 How. U. S. 79.

In that case, the defendant was sued on a promissory note, the consideration of which was the price of certain slaves taken to the State of Mississippi in violation of the law of that state.

Upon the question whether the note was void, the court held that the intention of the legislature, as to the validity of the note, must be decisive of the question. In their opinion, the court say: "Whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, it is not to be taken for granted that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice." And further: "It is true that a statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be

implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. It is not necessary, however, that the reverse of that should be expressed in terms to exempt a contract from the rule. The exemption may be inferred from those rules of interpretation to which, from the nature of the legislature, all of it is liable when subjected to judicial scrutiny. That legislators do not think the rule one of universal obligation, or that, upon grounds of public policy, it should always be applied, is very certain. For, in some statutes, it is said in terms that such contracts are void; in others, that they are not so. In one statute, there is no prohibition expressed, and only a penalty; in another, there is prohibition and penalty, in some of which, contracts in violation of them are void or not, according to the subject-matter and object of the statute; and there are other statutes in which there are penalties and prohibitions, in which contracts made in contravention of them will not be void, unless one of the parties to them practises a fraud upon the ignorance of the other. It must be obvious, from such diversities of legislation, that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be fully examined, before courts should refuse to give aid to enforce contracts which are said to be in contravention of them."

The rule laid down by the Court of Appeals in *Dudley* v. *Mayhew*, 3 N. Y. 9, is doubtless the true rule: "That where a statute confers a right, and prescribes adequate means for protecting it, the proprietor is confined to the statutory remedy." All other remedies in such case are excluded. And, also, in *Behan* v. *The People*, 17 N. Y. 516, that where an act is prohibited by statute, which is not criminal at common law, the legislature, having fixed the penalty in the prohibitory act, designed that there should be no other punishment.

In the case of *Smith* v. *Lockwood*, 13 Barb. 217, it was held that where a new right or means of acquiring it is conferred, and an adequate remedy given for its invasion in the same statute, the parties injured are confined to the statutory redress. To the same effect is *Renwick* v. *Morris*, 7 Hill N. Y. 575; *Bassett* v. *Carleton*, 32 Maine, 553; *Andover, etc., Turnpike Cor.* v. *Gould*, 6 Mass. 40; *Franklin Glass Co.* v. *White*, 14 Mass. 286; *Almy* v. *Harris*, 5 Johns. 175.

Judge STORY, in his commentaries on the constitution, secs. 439, 440, says: "If there be a conflict between the laws of the Union and the laws of the State, the former being supreme, the latter must of course yield." He says: "It is an axiom, if power is given to create a thing, it implies a power to preserve it. A power to destroy, if wielded by a different hand, is hostile to and incompatible with this power to create and preserve. Where this repugnancy exists, the authority which is supreme must control, and not yield to that over which it is supreme. Consequently the inferior power becomes a nullity."

The question under examination was very fully considered and decided, in the Southern District Court of Ohio, in the case of *The National Exchange Bank* v. *Moore*, 2 Bond, 170. Inasmuch as the above case arose under, and involved a construction of, the present national banking law, and received careful consideration from a learned judge, we make an extended quotation from the opinion of the court. The learned judge says:

"The question arising under this provision of the banking law of the United States has been fully and ably argued by the counsel on both sides, and numerous authorities have been cited. On the one hand, it is insisted that as by the law of Ohio six per cent. per annum is established as the legal rate of interest, the reservation of a higher rate by a national bank is an excess of its corporate power and usurious in its character; and that the writing or evidence of debt, on which interest is thus reserved or paid, is a nullity and can have no legal force. On the other hand, it is contended that

although such reservation of interest is in conflict with the statute and therefore illegal, the statute has affixed, as the penalty of the illegal act, not the forfeiture of the principal debt, but of the entire interest illegally reserved, with the right, to the party paying it, to recover, by suit against the bank, double the sum of the interest paid.

" The cases cited by the counsel, urging this exception to the demand of the petitioning creditor, are harmonious in holding that a contract or agreement against public policy, or founded upon an immoral consideration, or in conflict with an explicit statutory provision, is invalid and can not be enforced in a court of justice. It is, undoubtedly, a sound legal principle, that courts will not lend their aid to enforce contracts or transactions to which such objections apply. But, it occurs to the court, that the point presented in this case is not fully met by the cases cited. This court is called upon to give a construction to the section of the national banking law, which has been quoted. And the rule of interpretation is, to ascertain, from the whole section, what was the intention of the legislature in enacting it. In prescribing a rate of interest legally chargeable, and declaring an excess of such rate to be illegal, was it intended that the contract should be an entire nullity, and the principal, with twice the amount of interest charged, be forfeited; or, was it intended that the forfeiture of double the interest charged should be the penalty for the illegal act, without invalidating the right of the bank to enforce the payment of the principal debt? It was clearly within the legislative power to have declared that the penalty for charging or receiving illegal interest should be the forfeiture of both principal and twice the amount of interest. But, if this had been intended, would not such an intention have been expressed in explicit language?

"There is no reason to doubt, that if the section referred to had stopped with the prohibition of taking or reserving interest in excess of the rate prescribed, a loan made by a bank in conflict with such prohibition could not be enforced.

It would unquestionably be held to be an illegal and void act. But the legislature has chosen to prescribe a specific penalty for the illegal act, namely, the forfeiture of double the sum of the entire interest charged or paid, and have not declared that the principal debt should be forfeited. It is certainly not reasonable to infer that it was the intention of Congress to provide a double penalty for the illegal reservation of interest on loans. Yet such would be the effect of the construction of the section referred to, as insisted on by counsel for the alleged bankrupt. So far as the court is advised, there is no law in any of the States of the Union on the subject of usurious interest, which provides for the forfeiture of the entire debt on which such interest has been charged and paid, together with the interest and a liability on the part of the creditor to pay twice the amount of the interest to the debtor. I am therefore led to the conclusion that by a fair implication, it was not intended by Congress, in the enactment of the section referred to, to punish a bank for reserving interest in excess of the statute, by the forfeiture not only of the principal debt, but double the interest charged or received. It was held by the Supreme Court of the United States, in the case of *The United States* v. *Babbit*, 1 Black, 61, that ‘what is implied in a statute, pleading, contract, or will, is as much a part of it as what is expressed.’ From the provisions of section 30, it would seem to be fairly implied that while the specific forfeiture named is enforceable, the transaction as to the principal debt is not invalidated.

“This view, in my judgment, violates no principle of sound morality or of public policy. It was clearly competent for the Congress of the United States, in the creation of the national banking system, to visit the banks with a severe penalty for taking excessive interest, without a forfeiture of the debt. In this age of commercial enterprise and activity, many solvent and perfectly responsible persons find that they can make profit by borrowing money at a rate of interest above the legal standard. If the rate charged is not so

high as to be unconscionable and oppressive, no wrong is perpetrated on the borrower, and no just reason is perceived for absolving him from his liability to pay the principal debt, unless the legislative will to that effect is clearly expressed. It may be right and expedient that proper guards should be provided by law against extortionate charges for the loan of money. Usury, in its odious sense, is immoral and reprehensible; but if one voluntarily borrows money from a bank or an individual, and in good faith promises payment, with interest beyond the legal rate, there is no justice in visiting upon the lender the forfeiture not only of the debt, but subjecting him to a liability at the suit of the borrower, to double the amount of interest charged. If there is culpability in such a transaction, both parties are equally implicated; but the construction of the statute insisted upon places it in the power of the borrower, not only to relieve himself from the entire debt, but to make dishonorable gain by suing for and recovering double the amount of interest reserved. In the absence of any clear statutory provision for this purpose, I am unwilling to sanction such a construction of the section of the law referred to as will lead to the results indicated.

"There is high judicial authority for the doctrine that an act may be unlawful as within the prohibition of a statute, and yet a debt or obligation growing out of the act be valid, unless it appears by a fair construction of the statute that it was the intention of the legislature that it should be void."

The national banking law prescribes three penalties for reserving or receiving usurious interest.

1st. The forfeiture of all the interest remaining unpaid.

2d. The recovery of twice the amount of interest that has been paid.

3d. It is provided by the 53d section of said act, that the knowingly violating, or permitting the violation, of any of the provisions of the act by a director shall be a ground of forfeiture of all the rights and franchises granted, to be adjudged by a court of the United States in a suit for that

purpose, prosecuted by the comptroller of the currency.

We are now asked to add a fourth, by holding that the reserving or receiving of illegal interest shall defeat a recovery upon the note for the principal debt. It is our province to ascertain and declare what penalties and forfeitures have been prescribed by Congress, but we possess no power to add to what has been provided in the act of Congress.

It results from what has been said, that the court below committed no error in sustaining the demurrer to the ninth paragraph of the answer.

It remains to inquire whether the court erred in overruling the motion for a new trial.

It appears from the bill of exceptions, that the court rendered judgment for the principal and interest at the rate of ten per cent. from the dates of the notes, but refused to allow anything for attorney's fees.

The court erred in allowing interest on the notes, first, because all the interest was forfeited, and, second, because the notes could only bear interest from their maturity, *if the interest had not been forfeited.*

The court erred in refusing to allow the plaintiff reasonable attorney's fees for prosecuting the action.

The judgment is reversed, with costs, each party to pay one-half thereof; and the cause is remanded, for a new trial in accordance with this opinion.