NATIONAL BANK OF JEFFERSON v. A. BRUHN AND W. J. WILLIAMS.

(Case No. 1865.)

1. COLLATERALS — EVIDENCE — NEGLIGENCE. — Two parties were sued on a joint note for $328.95, bearing interest at two per cent. per month; they pleaded in reconvention that one of them had deposited with plaintiff $1,300 in scrip, as collateral security for the note sued on, and also for another note for $520 previously made and delivered to plaintiff by the defendant who deposited the scrip. That plaintiff had sold $1,000 of the scrip and applied the proceeds to the payment of the larger note and a part payment of the smaller, but, contrary to the instructions of defendants, had held the remaining $300 in scrip until it had depreciated in value so as to be almost worthless. These allegations were substantially proved. The second note did not show upon its face that it was secured by the same collaterals as the first. *Held:*

   (1) The scrip remaining after the first note was satisfied should have been applied to the payment of the second.

   (2) Evidence was admissible to prove that the second note was secured by additional collaterals to those appearing upon its face.

   (3) Defendants should be credited with what the proceeds of the collaterals would have been, if plaintiff had not been negligent in disposing of them.

2. USURY — NATIONAL BANKS — REVISED STATUTES UNITED STATES, SECTION 5197 — INTENT. — Under the constitution and statutes of Texas, in force March 26, 1874, eight per cent. per annum was allowed when no interest was specified, but the parties might agree upon any rate (Pasch. Dig., art. 3940). The Revised Statutes of the United States, section 5197, provide that national banks may charge the rate of interest allowed by the state or territory where they are located, and no more, but where no rate is fixed by such state or territory, the bank shall not charge exceeding seven per cent. per annum.

3. SAME.— The general rule and intention is, that national banks shall stand on the same footing with individuals; the United States statute provides what interest its banks shall charge when no rate has been prescribed by the state; but the rate had been regulated by the state in March, 1874, and hence national banks could at that time contract for any rate of interest, like individuals. This is the spirit and intention of the law and is certainly not against its literal meaning.

4. SAME.— The decisions of the United States supreme court teach that the statute referred to is to be liberally construed in favor of national banks, and even when the language of the statute would restrict them to a less rate of interest than is allowed to individuals, the intendment of the law must be presumed to have been otherwise. Tiffany v. Nat. Bank of Mo. held that the intent of the law was to put national banks on an equal footing with state banks; to allow the state banks to charge any amount of interest, and national banks only eight per cent., would violate that intention; to say that national banks could charge only seven per cent., would be to say that the state had prescribed no rate of interest. Cases reviewed.

APPEAL from Marion. Tried below before the Hon. W. P. McLean.

This suit was originally instituted in the county court of Marion county, on the 5th of October, 1877, against A. Bruhn and W. J. Williams, to recover judgment against them on a certain promissory note for $328.95, executed and delivered by them jointly on the 26th day of March, A. D. 1874, due sixty days after date, and bearing interest at two per cent. per month after maturity. After the passage in 1879 of the act diminishing the jurisdiction of the county court of Marion county, and conferring the civil jurisdiction of that court upon the district court of the county, this cause, with others, was duly transferred to the district court.

The defendants answered, pleading in set-off or reconvention, first, that certain city scrip or treasury warrants of the city of Jefferson, aggregating $1,300 in amount, had been deposited with plaintiff by defendant Bruhn, as collateral security for the note sued on, and another note for $520 previously made and delivered by defendant Bruhn alone to plaintiff; that plaintiff was authorized and required to sell all or a sufficiency of the scrip to pay the notes after their maturity; that the scrip, at the time of the maturity of the notes, was worth sixty-five to seventy cents on the dollar; that plaintiff did sell $1,000 of the scrip at sixty-five cents, and applied the same to the payment in full of the note for $520, and interest, leaving a small balance, which was placed to the credit of the note sued on, to wit, $29.64; that there still remained in plaintiff's hands $500 in scrip, of the value aforesaid, which defendants requested and instructed plaintiff to sell and apply to the payment of the balance

of note sued on; but that plaintiff wilfully and negligently failed to place the scrip on the market and sell it until it became so greatly depreciated as to be almost worthless, and was finally sold by plaintiff at about fourteen cents on the dollar; and defendants prayed that they be allowed to set off the scrip against the note at the price which it was reasonably worth at the time of the maturity of the note, when they say it should have been sold.     Defendants further pleaded that under the national banking act of congress, plaintiff, which existed and was organized under and by virtue thereof, was prohibited from charging more than seven per cent. per annum interest on debts due to it, and that the note sued on was, and is, usurious; and prayed that defendant recover of plaintiff double the amount of interest already paid on the note for $520, and the note sued on, which defendant alleged to be more than $300, and pleaded set-off and recoupment for double that amount, to wit, $600.     The defendant Williams also pleaded suretyship, and his alleged discharge by plaintiff's failure to protest or sue on the note, and prayed for subrogation.

The plaintiff, in reply, excepted specially: 1st, to the plea of usurious interest; and 2d, to defendant Williams' plea setting up failure to sue and non-protest, as a release.     These exceptions were sustained by the court, and defendants filed their amended answer (erroneously styled " first supplemental answer ") renewing the plea of usury and set-off, and all matter contained in their original answer, and in addition alleging that the rate of interest " fixed " by the laws of Texas, at the time of the execution of the note, was eight per cent. per annum, and claiming all interest in excess of *that* rate to be usurious, and praying as before.

The case was tried first before the court without a jury at the January term, 1880, in the district court, and judgment rendered for plaintiff for amount claimed; from which the defendant appealed to the supreme court, and the judgment was reversed and remanded solely because the record failed to show the transfer from the county court, and hence showed no jurisdiction in the district court.     See Bruhn and Williams v. National Bank of Jefferson, 54 Tex., 152.

At the December term, 1883, the case was submitted to a jury and resulted in a mistrial.     In the mean time the court (Hon. B. T. Estes, judge) had reconsidered its ruling sustaining plaintiff's exception to defendants' plea of usury, and held the same to be lawful and sufficient.     At the December term, 1884, plaintiff renewed these exceptions before Hon. W. P. McLean, judge presiding, and the same were overruled, to which plaintiff excepted.     Plaintiff's appli-

cation for continuance being overruled, the case was tried at the December term, A. D. 1884, and resulted in a verdict for defendant for $128.36.

*Todd & Hudgins*, for appellant, on the question of usury, cited: R. S. U. S., secs. 5197, 5198; Const. of Texas of 1869, art. XII, sec. 44; Pasch. Dig., arts. 3939, 3940; Tiffany v. Nat. Bank of Mo., 18 Wall., 409; Nat. Bank v. Dearing, 1 Otto, 29; Hinds v. Marmolejo, 60 Cal., 229; Gray v..Bennett, 3 Met., 522, 529; Nat. Bank v. Garlinghouse, 22 Ohio St., 492; Central Nat. Bank v. Pratt, 115 Mass., 539; Davis v. Randall, 115 Mass., 547.

On set-off, they cited: Allbright v. Aldrich, 2 Tex., 165; Castro v. Gentiley, 11 Tex., 28; Henderson v. Gillian, 12 Tex., 71; Carothers v. Thorp, 21 Tex., 358; Duncan v. Magette, 25 Tex., 245; Hamilton v. Van Hook, 26 Tex., 302; Parks v. Dial, 56 Tex., 261; Craddock v. Goodwin, 54 Tex., 578; Greathouse v. Greathouse, 60 Tex., 597; Barnett v. Nat. Bank, 98 U. S., 555; Driesbach v. Nat. Bank, 104 U. S., 52; Stephens v. Monongahela Bank, 111 U. S., 197.

*F. M. Henry*, for appellees.

WILLIE, CHIEF JUSTICE.— The district judge did not err in his rulings upon the plea of set-off, and the introduction of evidence to sustain it. The defendant was entitled to have the value of such collaterals as were left after extinguishing the five hundred and twenty dollar note, applied to the note sued on.

Bruhn testified that the $1,300 in scrip described on the face of the former note was intended to secure both. This could hardly have been the intention of the parties at the time the first note was executed; for the second note was not then in existence. The reasonable interpretation of his statement is that when the second note was executed, the understanding was that the collaterals named in the first should stand as security for both. The effect of such an agreement, under the circumstances, was to authorize the application of any surplus of the scrip remaining after the first note was satisfied, to the payment of the note upon which this suit was brought. Such seems to have been the construction placed upon the transaction by the plaintiff, for the surplus left of the proceeds of $1,000 in scrip, after paying the five hundred and twenty dollar note (amounting to $29.64), was applied by the bank as a credit upon the note in suit.

Bruhn's evidence did not vary the terms of either note. Under

his testimony the same collaterals secured the first note that were enumerated upon its face.   The second was secured by more than were named in it; but it certainly does not vary a contract to secure it by additional collaterals.   This disposes of the point made by appellant that the defendants could not set off the several debt of one of them against a note held by the plaintiff against both; nor unliquidated damages against a certain demand.   The defendants were attempting to do neither.   Their object was to have their note credited with what would have been the proceeds of collaterals given to secure it, had not the plaintiff, through its own negligence, failed to comply with its contract in disposing of these collaterals. Argument is unnecessary to show that this was ·a legitimate defense.

The important question in this case arises upon the defense of usury, pleaded in bar of a portion of the plaintiff's demand.

That question is:   Could a national bank located in Texas contract to receive two per cent. per month interest on a note executed March 26, 1874?

Under our constitution and statutes then in force, eight per centum per annum was to be taken, recovered and allowed, when the rate of interest was not specified (Pasch. Dig., art. 3940); but parties might contract for any rate of interest upon which they might agree, all usury laws having been abolished by the constitution of 1869.   Art. XII, sec. 44.   There was, therefore, nothing in the laws of Texas to prohibit national banks from charging two per cent. per month interest, and if they were restrained from so doing it must have been by reason of some act of congress regulating this subject.   It is claimed that the thirtieth section of the national banking law, taken in connection with the laws of Texas in force at the time, did prohibit such national banks as were located in Texas from contracting for such a rate of interest.

That section, so far as pertinent to the question before us, reads as follows:

" Any association may take, receive, reserve and charge on any loan or discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate allowed by the laws of the state or territory where the bank is located, and no more, except that where by the laws of the state a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such state under this title.   When no rate is fixed by the laws of the state or territory, or district, the bank may take, receive, reserve or charge

a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill or other evidence of debt has to run." R. S. U. S., sec. 5197.

The general rule established by this section is, that national banks may charge as high a rate of interest as is allowed by the laws of the state or territory where the bank is located. Under this rule no doubt can exist but that the appellant bank was authorized to charge two per cent. per month interest upon the note in suit, as that rate was then allowed by the laws of this state. Was this right restrained by any of the subsequent provisions of the section? The only exception to this general rule as announced in the act of congress, is when by the laws of a state a different rate is limited for banks of issue organized under state laws; in that case the rate so limited is to be allowed to national banks located in such state. This exception has no application to the case in hand, as, under our laws, no distinction was made between banks and individuals as to the rate of interest that might be charged upon contracts. The only other clause in the section that regulates the rate, is that which provides that where no rate is fixed by the laws of the state or territory or district, the bank may reserve a rate not exceeding seven per centum. This is no exception to the general rule already stated, but provides for a class of cases not included in it. The rule is that banks may charge as much interest as is allowed by the local laws to any person whatever. The provision we are considering is in effect that when no interest is allowed by the local laws to any person, natural or artificial, the national banks may charge and receive seven per cent. and no more. The statute of the state making no regulations as to what interest may be charged, congress takes the subject in hand so far as national banks are concerned, and prescribes what rate they may receive. It is clear that this provision does not apply to the case under decision; for, as we have seen, the laws of Texas did not regulate the subject at the time the note was given. It prescribed eight per cent. as the rate when none was specified in the contract. It allowed conventional interest at any rate when agreed upon between the parties. It made a case clearly within the general rule laid down in the section cited, according to its spirit and intent, and certainly not against its literal meaning.

We are taught by the decisions of the supreme court of the United States that this section is to be liberally construed in favor of national banks; that they are national favorites; and even when the language of the statute would restrict them to a less rate of in-

terest than is allowed to individuals, the intendment of the law must be presumed to have been otherwise.

In the case of Tiffany v. Nat'l Bank of Missouri, 18 Wall., 409, that court held that the exception limiting national banks to the rate of interest allowed to state banks, applied only when this rate was greater than that allowed to others, and not to cases where it was less. Literally construed, the exception seemed to apply in the one case as well as in the other. But the court said that the intention of the law was to give national banks "a firm footing in the different states where they might be located. It was expected that they would come into competition with state banks, and it was intended to give them at least equal advantages in such competition." They further said that the intention "was to allow to national associations the rate allowed by the state to natural persons generally, and a higher rate if state banks of issue were authorized to charge a higher rate." It is very evident that this intent would be thwarted if this law be so construed as to allow state banks to charge and receive two per centum per month for money, and at the same time to restrict national banks to seven or eight per centum per annum. We certainly should not so interpret the law where, as in the case of the present statute, the language did not require such interpretation. To hold that the appellant bank could charge no more than eight per cent. on the note in suit, is to decide that it cannot contract for conventional interest, though the banks of the state are allowed to do so. This is directly contrary to the express provisions of the federal law which we have cited, in prescribing a general rule by which national banks are to be governed in contracting for interest. Newell v. Nat'l Bank of Somerset, 12 Bush, 57; Wiley v. Starbuck, 44 Ind., 298. It would also deny to national banks a favorable provision of our interest law, and at the same time extend its benefits to state banking institutions.

To hold that no more than seven per cent. could be charged upon the note is to say that, at the time it was executed, we had no law in Texas regulating the subject of interest, and providing for its allowance upon contracts of this character, which was not the case. In short, can it be said that a national bank is permitted to contract for interest at a rate allowed by the law of a state, when it cannot charge two per cent., though that rate is authorized by such laws? We think these banks are on a footing with other banks; and that they may contract for the highest rate fixed or allowed by the statutes of the state, and that this is the meaning of the thirtieth section of the national banking act. This same question was decided by

the supreme court of California, in accordance with the conclusions of this opinion. Hinds *v.* Marmolejo, 60 Cal., 229.

We think the district judge erred in charging the jury that the note sued on was tainted with usury, and for this error the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 30, 1885.]