Bissell, P. J.,
delivered the opinion of the court.
The National Bank of Longmont brought this suit against •the appellant on a promissory note for five hundred dollars dated June 15,1892, due five months after date, and bearing interest at one per cent per month. The maker of the note defended, set up that he was a surety on the paper for one Bechtolt, with whom-he had signed another obligation of an antecedent date, of which the note in suit was a renewal. He alleged that the bank had charged and received on the antecedent paper a greater rate of interest than seven per *563 cent. The answer contained a paragraph relating solely to a provision in the note authorizing the entry of judgment for ten per cent of the note as attorney’s fees. It was stated that this was but an indirect way of reserving interest above the rate of seven per cent. This portion of the answer will not be again adverted to, since the settlement of the main issue disposes of it as a defense, and for the further reason that, had it been admissible in bar of recovery, the fact was not sufficiently pleaded to make the defense available. On these facts the defendant sought to obtain a credit on the original paper of one hundred and five dollars, being- the interest at one per cent, originally paid by Bechtolt, the penalty of fifty dollars, and thirty-one dollars, which was the amount of interest due on the note in suit if it were collectible.
The answer was demux-red to. The demurrer was sustained and judgment entered for- the face of the note and interest, and the defendant appealed.
In x-eality, the only question involved is as to the right of a National Bank in Colorado to reserve and receive, whether by way of loan or discount, a greater rate of interest than seven per cent. In xxo event could the sums paid by way of interest, even though illegal, be applied to the reduction of the principal sum due on the note. Though soxxxe states, in the litigation arising on the National Banking Act, adjudged this admissible where a counterclaim was a proper method of defexxse, the question was settled adversely to' the claim by the supreme court of the United States.. That court decided that in suits upon notes where illegal interest was reserved, a defense based upon the xeservation of the illegal interest would simply limit the recovexy to the principal sum due. Barnett v. National Bank, 98 U. S. 555; Driesbach v. National Bank, 104 U. S. 52.
The sole remaining ixiquiry concerns the recovery of the thix-ty-one dollars included in the judgment by way of interest, according to the tenor of the note. The statutes in Colorado concerning ixxterest have beexr ixx force ever since it was a state. The act has always provided a specific rate of *564 interest, which is now eight per cent, hut the act regulating the matter has likewise contained a section permitting parties to stipulate for any rate of interest, and authorizing the recovery of the stipulated interest. The National Banking Act, as amended in 1864 (sections 5197-5198 U. S. Statutes), in general provides that such banking associations ma'y reserve and receive any rate of interest allowed by the law of the state wherein- the bank is organized. There was some-contrariety of opinion among the state courts as to the extent of the power conferred by these two sections, and concerning the proper construction of the clause granting the' banks the right to charge interest in those states where one rate was prescribed for banks of issue and another for per-' sons generally. This matter has likewise been settled by the supreme court of the United States, which has held that the banks may charge either rate at their pleasure, selecting, if they choose, the maximum. Tiffany v. National Bank of Missouri, 18 Wall., 409.
None of these supreme court decisions, however, toucli the matter in issue, which is: Are national banks in states having a.statute upon the subject of interest,-which fixes a rate, hut likewise contains a-provision authorizing parties'to stipulate as they may choose respecting this matter, authorized to contract like other citizens' living within the sovereignty? This question has not been settled. The statute' respecting national banks has been in force for upwards of' thirty years, and considerable litigation has arisen on this-particular question. The suits have taken various • forms and the query has been presented by way of defense to prevent the recovery of the stipulated interest, and, likewise, in actions brought to recover the penalty of-twice the interest where the rate has been manifestly • illegal. Nevertheless, it remains true that the question as here presented has never reached the supreme court of the United States. The case relied on by the appellant, and which at first blush-would seem to sustain his contention, is the National Bank v. Johnson, 104 U. S. 271. This, case went .up on a writ *565 of error to the court of appeals of the state of New York, and the federal tribunal took jurisdiction because of the question involved. In support of our position that this case is not decisive of the present controversy and in reality does not touch the principles under discussion, it is needful to state what that case is, the point at issue, and the questions determined. This was a penal action against the bank brought originally by Johnson, in the supreme eourt of New York, to recover twice the interest alleged to have been re! served and received by the corporation in the business done by the parties. Johnson insisted that the bank was subject to the penalties, and liable to the provisions of the statute respecting usury and interest in the state of New York, which, in general, provided that all usurious loans should be absolutely void, and the lender could recover neither principal nor interest. On the other hand, the bank insisted that, according to the terms of the transaction, it was one entirely analogous to the discount of paper by the’ bank where the note was made by “A” to the order of “B,” who indorsed and sold it to.the bank. It must be remembered that these two propositions are dependent upon two different considerations. That respecting usury is dependent upon positive statute; that respecting the Taw of discount is a judicial declaration of the law, and is not a creature of legislative enactment. ■ For more than half a eentury, it has been the law of New York that, in the matter of discount, banks were not amenable to the usuiy statute. It may seem like, a judL cial evasion of- the law, but in that mercantile community it has never been changed, the courts holding in a case of that description there are two contracts resulting from the facts; the first an executed contract concluded by the indorsement and delivery of the paper whereby the title passes to the holder; the other an executory agreement between the indorser and the indorsee, operative on the default of the maker. Of course, the two contracts are somewhat differ-' ent in their limitations, since in the one case the bank re- ■ covers from the maker the amount of the note and the- in *566 terest, and in the other the sum loaned, which is treated as the consideration of the executory agreement. Both these questions were resolved by the court of appeals in the negative, and their conclusion was affirmed by the supreme court. It was decided that state statutes respecting usury were not applicable to national banks, excepting in so far as they might be examined to ascertain what rate of interest the national banks were entitled to reserve. The scope of the banking act, the right of the general government to establish the system, delegate the power granted and impose restrictions on the banks organized under it, were fully considered in the case of the Farmers' and Mechanics' National Bank v. Dearing, 91 U. S., 29. It was there decided that these banks were part of the instruments adopted to aid in the administration of the government in one of its most important departments. The corollary was that the states could exercise no control over them, nor in any wise affect their operations, except in so far as power might be granted by the act itself. This principle compelled the court to conclude that the usury laws in New York, save in the particular referred to, neither controlled nor in any wise affected Johnson’s right of recovery. It was equally plain, and so held by the court, that the law declared in New York, respecting the discount of paper, had neither force nor application to the question at issue. In the first place it was not a matter of positive statute respecting the subject of interest, but was simply a judicial determination by the courts of New York that the discount of paper, under the circumstances suggested, did not come within the purview of the usury statute. Since the statutes of the state could only be resorted to for the purposes of ascertaining what rate of interest national banks might charge, manifestly the decisions of the appellate courts of that state respecting the matter of discounts were of no consequence, and afforded no possible solution of the query. There was another equally cogent reason and one possibly •more conclusive of the subject. The federal statute itself, in section 5197, inhibited national banks from reserving *567 other than the permissible interest, whether it was done by way of loan or by way of discount. The positive limitation of the section puts loans and discounts on the same identical basis. This, of itself, would prevent the application of the New York doctrine, and the negative answer to the inquiry given by the court of appeals was, of necessity, affirmed by the other tribunal. These were the only questions in that litigation. It is true that in the course of the discussion concerning this matter, the court suggested that when no rate of interest was fixed by the laws of the state, a bank could only charge seven per cent per annum. There are two reasons why that declaration by the court could not be taken as decisive of the present inquiry. As demonstrated, the case under consideration did-not come up from a state where there was no statute fixing a rate, nor from one where the law fixed one rate but permitted anj*- rate to be charged which might be agreed upon between the parties. It came from a state having one fixed rate of interest which, of course, under the federal statute, would be conclusive upon the right of a national bank. In the next place, it was a statement arguendo and could only be held to refer to a case where the laws of the state were silent.
Since there is no conclusive federal adjudication upon the subject, we are compelled to resort to the decisions of other states to ascertain the law. - We take it that while adjudications of sister states are not necessarily conclusive upon a court, it ought to be true, under circumstances like the present, such judgments should be most weighty in influencing our determination and should be accepted as decisive, unless they are totally at variance with our own judgment, and hostile to what we believe to be a necessary construction of the act. It is of greater interest to the mercantile community, as well as to the legal profession, that the law should be uniformly declared than that it should be always absolutely accurate. The court has been cited to no case expressing a different opinion from that at which we have arrived, while thd cases referred to are in exact accord with our conclu *568 sions. Three of the cases present the question in a somewhat different aspect from the one at bar, but are very illustrative of this theory of construction. They were actions upon notes reserving ten and twelve per cent interest where the general rate was six, though the parties by contract were authorized to charge at the rate of ten and twelve per cent per annum. It was conceded that six was the general rate fixed by the statute, and that the other was totally dependent upon the agreement of the parties, yet the courts held that the national banks might reserve and receive whatever interest was allowed by the law of the state regulating the matter. Wiley v. Starbuck, 44 Ind. 298; Newell v. National Bank of Somerset, 12 Bush. 57; Crocker v. First National Bank of Chetopa, Thompson’s National Bank Cases, vol. 1, 317.
It will be observed that in these cases the rate was established by the law of the state, and there was a limit put by the same laws, beyond which neither individuals nor banks could go. Within the limit, interest might be reserved. The courts in reaching their conclusion proceeded upon the hypothesis that, under the National Banking Act, the bank might charge any interest allowed by the laws of the state in which it was organized, even though the rate above six must be the subject of convention, and, unless the limit were reached, the rate as a rate would not be stated. This was regarded as of no moment in the interpretation of the statute. It is very plain that if the bank had reserved nine per cent, while the respective limits were six and ten, an amount would have been charged in a case where there was no definite legislation directly authorizing either the individual or the bank to charge nine per cent, other than that flowing from the legislation which made the matter of interest between two definite limits a subject of convention. This distinction does not seem of very much consequence in the solution of the inquiry. If it be true that in a state where interest may be the subject of an agreement, the bank may reserve whatever the parties agree upon up to a maximum, *569 then all statutes reserving the right of agreement to parties, whether they name a maximum or not, mqst be equally effectual for the purposes of a grant of power.
The definite question under consideration has been expressly settled against the appellant in three different states. National Bank of Jefferson v. Bruhn et al., 64 Tex. 571; Hinds v. Marmolejo et al., 60 Cal. 229; Farmers’ National Gold Bank v. Stover et al., 60 Cal. 387; Guild v. First National Bank of Deadwood, 57 N. W. Rep. 499.
These courts conclude that national banks may charge as high a rate of interest as is allowed to either individuals or banks of issue in the various states of their organization. In all states where there is a statute fixing a rate of interest, the only limitation upon this right must be found in the statute itself. The restriction contained in the National Banking Act which forbade national banks to charge more than seven per cent only became operative in the absence of state legislation on the subject. Wherever the state legislature has acted, the general grant of power to banks to charge whatever rate might be reserved, either by citizens or banks of issue, became operative. Under this construction, banks in Colorado are placed on precisely the same footing as individuals. The legislative act on the subject fixed a rate, to wit: eight per cent, and further provided another rate of interest, which is-determined by the agreement of the parties. That the legislature has failed to say the rate shall not exceed twelve per cent per annum or five per cent per month, does not destroy the legal effects of the enactment, nor restrict its operations to other banks or citizens generally, nor make the case one where no rate of interest is named, whereby the federal limitation becomes operative. In common with these other courts which have reached a similar conclusion, we hold that national banks -in Colorado stand on the same footing in the matter of interest that other banks and individuals occupy. ■
The defense was unavailable. The demurrer was properly sustained, and the judgment will be affirmed.

Affirmed,