H. T. MORRISON *et al.* v. THE STATE BANK OF CHANUTE.

No. 72.

USURY—*Improper Offset.* Where a party has dealings with a bank covering a period of two years, and during such time borrows various sums of money, paying thereon usurious interest, and afterward borrows other money from the bank, giving a note with surety therefor, and a suit is afterward brought on such note, *held*, that the party cannot offset such note by usurious interest paid on former loans.

MEMORANDUM.—Error from Neosho district court; L. STILLWELL, judge.   Action on a promissory note by The State Bank of Chanute against H. T. Morrison and R. C. Rawlings.   Judgment for plaintiff.   Defendants bring the case to this court.   Affirmed.   The opinion herein, filed January 11, 1896, states the material facts.

Morrison v. Bank.

*C. A. Cox*, for plaintiffs in error.

*H. P. Farrelly*, for defendant in error.

The opinion of the court was delivered by

Johnson, P. J. : This suit was commenced before a justice of the peace of the city of Chanute, Neosho county, Kansas. The plaintiff below, in its bill of particulars, alleged that on the 9th day of October, 1889, H. T. Morrison and R. C. Rawlings executed and delivered to the said State Bank of Chanute, plaintiff, their promissory note in writing of that date, and thereby promised to to pay the plaintiff, in 90 days after date, the sum of $450, with interest thereon from maturity at 10 per cent. per annum until paid. A copy of the note is attached to the bill of particulars showing certain credits indorsed. The plaintiff alleges that after deducting the credits there is a balance still due and owing from defendants to the plaintiff upon said note the sum of $295.13, together with interest thereon from February 27, 1891, at the rate of 10 per cent. per annum.

In defense of the allegations set out in the bill of particulars of the plaintiff below, the defendants below, in answer, deny all the allegations in the bill of particulars, except the execution and delivery of the promissory note, and allege that said note was given without any consideration therefor ; that they were not indebted to the plaintiff in any sum whatever ; that said note was given by defendants in payment of usurious interest on notes formerly made, and upon which 12 per cent. was laid and 15 per cent. charged ; and that said note is for the excess interest over and above the legal rate of 12 per cent. agreed upon by the parties thereto. This is substantially the defense re-

lied upon, but the answer is very prolix, and sets out
that plaintiff, in October, 1887, was engaged in the
banking business in Chanute, Neosho county, Kansas;
that R. C. Rawlings was then engaged in the general
mercantile business in the same place, and that to
carry on his business it required large amounts of
money and he had been borrowing money from the
Chanute National Bank to carry on his business, and
that said Chanute National Bank was located near to
his business house; that his place of business was on
the east side of the railroad-track, and the State Bank
of Chanute was located on the west side of the railroad-
track; that the officers of said bank made certain
promises to loan him all the money that he might
require to carry on his business, and by reason of
such promises and other inducements caused him
to remove his place of business to the west side of
the railroad-track; that said bank agreed that by
reason thereof it would loan him all the money
necessary to carry on his business successfully, at
15 per cent. per annum; that he entered into an
agreement with the officers of the bank to let him have
all the money that he might require at 15 per cent.
per annum; that from time to time he borrowed large
sums of money from the bank, paying therefor inter-
est at 15 per cent. per annum as per his agreement;
that the note in suit was for interest in excess of legal
interest; that he had paid the plaintiff more money
than he owed, with legal rate of interest; and that
this note was for usurious interest exclusively.   There
is attached to the answer of defendants below an
itemized statement of the various sums of money bor-
rowed, giving date, amount, discount, number of the
loan, and the amount of interest on each loan.

This statement covers a period of time extending

from October, 1887, to October, 1889. It is insisted that all these loans, discounts, and all the transactions connected with the borrowing of money, giving of notes, and renewals thereof, was in pursuance to and under the original agreement to loan him all the money that he might require in his business, and that he would pay for the loans of such money 15 per cent. per annum. This is the theory upon which the defendants below claimed the right to try said case. The plaintiff held to the theory that each loan was a separate transaction, and that upon each loan there was a specific agreement as to discount and interest. The record in this case is very indefinite, but we gather from it that this case was tried before a justice of the peace and resulted in a judgment for one or the other of the parties, and was taken to the district court by appeal, and there tried before the court and a jury, and resulted in a verdict and judgment for the plaintiff below for the sum of $258, to which the defendant excepted, made case, and comes to this court for a review.

On the trial of the case in the district court R. C. Rawlings was a witness for the defense, and testified fully as to all the transactions between himself and the State Bank of Chanute, plaintiff, in the borrowing of money, the discounts on each note, the rate of interest paid on each, and the giving of chattel mortgages on his stock of goods to secure the payment of loans; that the aggregate amount borrowed of the bank was the sum of $11,600; that the plaintiff below held a first lien on his stock by chattel mortgage; that some time in May, 1889, Lynn and Alexander, of Illinois, each held a chattel mortgage on said stock of goods, being second and third liens, and came out here and took possession of the goods and paid the State Bank

of Chanute the amount due on its chattel mortgage, which was a first lien on the stock, and had said chattel mortgage duly assigned to them by said bank. On the 8th day of June, 1889, R. C. Rawlings and H. T. Morrison executed and delivered to the plaintiff bank their certain promissory note for $500, and another note for the sum of $1,200. On the trial of said case the following questions were put to Rawlings touching the consideration of this $500 note, and his answers thereto are as follows:

"Ques. Now, at that time, did you get the money, or was it a loan? Ans. I could not say which it was, sir, and I judge by your books, which I have looked at and which you showed up on the other trial, that I must have got the money; I did n't think, until I saw them, that I did; I cannot remember these things two years.

"Q. The note that was executed on June 8 — what was that for; the $500? A. That, according to the books, was for money.

"Q. You know it was for money, do n't you? A. No further than that; I did n't know by my own knowledge; according to the records — your books — I guess it was for money; they showed there was money paid out that day; I will admit, to avoid argument, it was money, according to your books."

The attorney for the defendants below, Mr. Fisher, here said:

"It is not disputed that the notes for $500 and $1,200 were for money. The $500 note was numbered 1368, and was executed June 8. That note was renewed by note numbered 1496, for $450."

Examination of the witness continued, as follows:

"Ques. Now the next note, the renewal of this note, however, is a note on which this suit is based? Ans. Yes, sir, the renewal of that note is the note; yes, sir.

"Q. The next note executed by you and Morrison, on June 8, for $500, was renewed August 10 by note No. 1496, for $450? A. Yes, sir.

"Q. Then again a renewal, October 9, for $450? A. Yes, sir.

"Q. And these three notes are the only notes Morrison has ever signed as security for you at the State Bank? A. Yes, sir.

"Q. And this note is the note upon which this suit is based, dated October 9? A. That is the note; yes, sir."

The witness also testified that on the 8th day of June, 1889, when the loan of $500 was made, the conversation between Daniels, the cashier of the plaintiff bank, and himself was that he would let Rawlings have money at the old rate. Witness, in answer to a question, said : "I says, 'What interest will you let me have it at?' He says, 'The old rate,'" and this note was afterward renewed in August and October, and the note sued on was the last renewal note for this loan.

Rawlings was the principal witness who testified on the trial of this case on behalf of the defendant, and upon this testimony, at the close of defendant's evidence, the court announced to the plaintiff's attorney that in the light of the evidence no other note could be investigated except the note in suit, and directed the plaintiff's attorney to confine his evidence to what the contract was with reference to the note of June 8, 1889, and the renewal notes thereof, and this is the real complaint in this case for which a reversal of this judgment is sought. The instructions of the court directed the attention of the jury to this particular note, and the court refused to charge the jury, as requested by the defendant below, respecting the dealings and transactions between Rawlings and

the State Bank of Chanute, covering a period of over two years.

We think the court did not err in its direction to counsel for plaintiff below to confine his evidence to the investigation of the note of June 8, and the renewals of that note. The evidence on behalf of the defendant by the person who had the transactions with the bank, and the main party in interest in this suit, shows clearly and conclusively that the transactions had between himself and the bank, out of which this indebtedness grew, was after the defendant Rawlings had ceased to carry on mercantile business at Chanute, and after parties holding the second and third chattel mortgages, in order to protect their liens, had taken the stock of goods and paid the State Bank of Chanute the amount of its chattel mortgage, and taken an assignment of said mortgage. The loan for which the note of June 8 was given was a separate and independent transaction, and defendant could not claim that money paid out on either of the former transactions that had been tainted with usurious interest could be set off against a separate and distinct transaction had subsequent to such usurious transaction. The court gave the jury the following instructions:

"2. The defense interposed by the defendant is that of usury. He claims in substance that an illegal amount of interest was exacted of him at the time he gave this note, and interposes that as a defense to the case so far as it goes. The provisions of the statute in regard to the note sued on in this action reads: 'All payments of money or property made by way of usurious interest or inducement to contract for more than 10 per cent. per annum, whether made in advance or not, shall be deemed and taken to be payments made on account of the principal and 10 per cent. per annum, and the courts shall render judgment for no greater sum than the balance found due after de-

ducting the payments of money or property made as aforesaid. The parties to any bond, bill, promissory note or other instrument of writing for the payment or forbearance of money may stipulate therein for interest receivable upon the amount of such bond, bill, note or other instrument of writing at a rate not to exceed 10 per cent. per annum : *Provided*, That any person so contracting for a greater rate of interest than 10 per cent. per annum shall forfeit all interest so contracted for in excess of such 10 per cent., and in addition thereto shall forfeit a sum of money to be deducted from the amount due for principal and lawful interest equal to the amount of interest contracted for in excess of 10 per cent. per annum.'

"3. There is no dispute that this note that is sued on here is a renewal of an original note of $500 that was given on the 8th day of June, 1889 ; that afterwards the sum of $50 was paid on that note, and that the note in suit of October 9, 1889, is a renewal of the note first mentioned, as I stated it a moment ago. The defendant claims from his standpoint that at the time he gave this original note, on June 8, 1889, the plaintiff exacted from him interest at the rate of 15 per cent. per annum."

"5. Now, if you find that should be the case, the result will be that plaintiff will forfeit from this note an amount that will equal the excess of 10 per cent. interest.

"6. That is to say, in order to get at the amount that it will forfeit by reason of that unlawful act you will compute interest at the rate of 5 per cent. per annum on the sum of $500, the amount of the original loan. You will compute that from June 8, 1889, to this date, and you will deduct that sum from whatever is now due upon the note, and return a verdict for the plaintiff for the balance. In the event you are not satisfied, by a preponderance of the evidence, that usury has been established against the plaintiff, it will be entitled to recover the sum of $295.13, with 10 per cent. from February 27, 1891, down to this date ; provided, of course, that in no event can you

return a verdict for the plaintiff for a sum in excess of $300. I have not computed it myself, and I do not know whether interest at that rate from that time would run it over $300 or not, but in no event can the plaintiff recover a sum over $300.''

Payment made on former loans by way of usurious interest or inducement to contract for more than 10 per cent. per annum cannot be deemed and held to be a payment made on account of the principal in a subsequent contract, and cannot be made the subject of set-off to an action on a note made subsequent to the usurious transaction. Where a party has already received a greater rate of interest than 10 per cent., as allowed by law, or has incorporated the same into negotiable paper and the same has been negotiated and paid, the party paying the same may recover double the amount of the excess above 10 per cent., by action against the party originally exacting the usury, in any court of competent jurisdiction; but this is in the nature of a penalty, and not on contract that may be made the subject of a set-off to some other debt than the one in which usury is charged. The case of *Fraker v. Cullum*, 24 Kan. 679, is decisive of this question. BREWER, J., speaking for the court, says:

"Two other matters are presented: First, the defendant, plaintiff in error, alleges that he paid usurious interest to the bank on notes other than those sued on, and claims the right to set off and recover double such interest in this action. The national-banking law, after providing that national banks may take the interest allowed by the laws of the state in which they are located, contains this provision (Rev. Stat. U. S., § 5198): 'The taking, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note . . .

14—KAN. APP.

carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid . . . may recover back, in an action in the nature of an action for debt, twice the amount of interest thus paid.' Can this claim for usurious interest be set off? This depends on the nature of the cause of action, for, unless it is one arising upon contract, it cannot, under our statute, be made a matter of set-off. The cause of action is clearly not founded upon express contract. The bank never promised to pay Fraker double the usurious interest it had received from him. The only express contract was the other way, and that contract had been performed.

"Is it founded upon an implied contract? The authorities say not. (*Hade v. McVay*, 31 Ohio St. 231; *Lucas v. Bank*, 78 Pa. St. 228; *Wiley v. Starbuck*, 44 Ind. 298.) The section creates a forfeiture, and, in case the party wronged has actually parted with his money, allows him to recover double damages. Usury, says the statute, forfeits all interest. That is the penalty for the forbidden act. It is in the nature of punishment for an infraction of the law. If no interest has been paid, but only contracted to be paid, that is the only effect of the statute. It thus far nullifies the contract, and forbids the recovery of such interest. But if it has been paid, the party may recover it back, and as much more. The forfeiture is not avoided by the fact that the contract has been performed; but, as though performance had increased the wrong, the damages are doubled. The cause of action is really one to enforce a forfeiture; but a forfeiture implies no contract. Generally, where there is an express contract, the law will not imply one. Here there was an express contract, a contract forbidden by the statute, and the penalty for the breach of which is this cause of action. That the penalty goes to the party suffering the wrong, rather than to the government, does not change the nature of the action. The statutes of the various states show many instances in which part or all of the penalty goes to

the party specially injured by the wrong, or to the informer. Still, the nature of the action is not changed thereby. It cannot justly be said that an action to enforce a forfeiture or recover a penalty is one founded on contract, no matter who is the party chiefly benefited by the recovery. (*Bank v. Commonwealth*, 2 Grant's Cases, 384.) There is, to be sure, an implied obligation resting upon every member of society to break no law and do no wrong to his neighbor; but this obligation is not the implied contract of which the law-books speak as one whose breach gives a cause of action upon contract. The authorities cited correctly construe the section, and the court did not err in ruling out the set-off.''

The jury in their verdict have found the amount due on this note, from all the evidence, under the instructions of the court, and we think that it is supported by the evidence and in accordance with the law as laid down by the court.

The judgment of the district court is affirmed.

All the Judges concurring.